UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| FRANK THUNDER HAWK-GALLARDO,<br><br>Plaintiff,<br><br>vs.<br><br>SGT. JEREMY WENDLING,<br><br>Defendant. | 4:17-CV-04001-KES<br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on plaintiff Frank Thunder Hawk-Gallardo's *pro se* amended complaint pursuant to 42 U.S.C. § 1983.  See Docket No. 28.  Defendants have moved the court for the entry of summary judgment in their favor.  See Docket No. 48.  This matter has been referred to this magistrate judge pursuant to the January 19, 2018, order of the Honorable Karen E. Schreier, United States District Judge, and 28 U.S.C. § 636(b)(1)(A) and (B).  The following is this court's recommended disposition of defendants' motion.

## PROCEDURAL HISTORY

Mr. Thunder Hawk–Gallardo initially filed his complaint on January 5, 2017.  The original complaint alleged causes of action against Sgt. Wendling of the South Dakota State Penitentiary (SDSP), an unknown United States Marshal, and against a fellow prisoner, Dre Red Feather.  See Docket 1

(complaint).  On March 31, 2017, the district court issued its "screening" opinion, directing service of Mr. Thunder Hawk-Gallardo's original complaint. Docket 11.

The district court dismissed Mr. Thunder Hawk-Gallardo's claim against the unknown United States Marshal, but construed Mr. Thunder Hawk-Gallardo's complaint to adequately allege a cause of action for failure to protect him in violation of the Eighth Amendment (as to Sgt. Wendling) and to adequately allege a pendent state law claim for assault (as to the fellow prisoner, Mr. Red Feather).  The district court therefore ordered the complaint to be served as to Sgt. Wendling and Mr. Red Feather.  See Docket 11.  On May 4, 2017, the district court entered its scheduling order (Docket 24), attaching a copy of the Local Rules and various portions of the Federal Rules of Civil Procedure for the benefit of Mr. Thunder Hawk-Gallardo.

Mr. Thunder Hawk-Gallardo thereafter moved to file an amended complaint, and the district court granted this motion.  See Docket Nos. 25 (motion to amend) and 27 (order granting motion).  Mr. Thunder Hawk-Gallardo filed a copy of his proposed amended complaint along with the motion to amend.  See Docket 25-1. In his proposed amended complaint, Mr. Thunder Hawk-Gallardo sought to add three new defendants:  United States, Ink.; Darin Young; and the State of South Dakota.  Id.  Mr. Thunder Hawk-Gallardo did not name in his amended complaint, however, his fellow prisoner, Mr. Red Feather.  Id.  The district court re-"screened" the amended complaint and dismissed the three newly-named defendants because Mr. Thunder Hawk-

2

Gallardo failed to adequately state claims against them.  See Docket 27.    As a result, the only defendant remaining in this lawsuit is SDSP Sgt. Wendling.[1]

The amended complaint was filed as a separate document in the docket as Docket No. 28.  It is the amended complaint upon which the court bases its decision in this opinion.  Mr. Thunder Hawk-Gallardo names Sgt. Wendling in all three counts of the amended complaint.  As explained in more detail below, Mr. Thunder Hawk-Gallardo labels all three counts as "failure to protect" claims, though liberally construed, this court interprets counts II and III as cruel and unusual punishment claims.  In the "request for relief" section of the amended complaint, Mr. Thunder Hawk-Gallardo requests injunctive and declaratory relief, as well as compensatory, punitive, and nominal damages. Docket 28, p. 7.

On August 21, 2017, the defendant moved for a protective order to stay discovery pending his summary judgment motion based upon the doctrine of qualified immunity.  Docket 32.  The district court granted this motion.  Docket 40.  Pursuant to FED. R. CIV. P. 56(c)(1)(A) and Local Rule 56.1.(A), Sgt. Wendling, through counsel, filed along with his motion for summary judgment (Docket 48) a statement of undisputed facts (Docket 50) which is

---

[1] See e.g. Barnes v. United States 111 Fed. Appx. 441, 444 (8th Cir. 2004) (unpublished) (trial court did not err in finding defendants who were not named in amended complaint had been dismissed by virtue of their absence from amended complaint, because an amended complaint supersedes the original complaint and renders the original complaint without legal effect) (citing In Re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000)).

supported by a brief (Docket 49) with attached an exhibit and several affidavits (Docket Nos. 51-53).

Several months have now elapsed since the filing of defendant's summary judgment motion. Mr. Thunder Hawk-Gallardo has filed an opposing brief, but has never filed a response to the defendant's statement of undisputed facts as required by Local Rule 56.1.B. Mr. Thunder Hawk-Gallardo has filed motions to this court complaining that the Pennington County Jail (where he is being housed) does not provide adequate legal research materials (Docket Nos. 30, 42). But copies of the pertinent local rules and Rules of Civil Procedure regarding summary judgment procedures were provided to Mr. Thunder Hawk-Gallardo by the district court along with the court's scheduling order in May, 2017. Docket 24. Because Mr. Thunder Hawk-Gallardo did not respond to the defendant's statement of undisputed material facts, they are accepted by the court and are deemed admitted pursuant to Local Rule 56.1.D.[2] Though the defendant refers in his statement of undisputed facts to Mr. Thunder Hawk-Gallardo's original complaint, the court refers to the amended complaint. It appears that because Sgt. Wendling was the sole remaining defendant and

---

[2] South Dakota Local Rule 56.1.D. states, "**D. Effect of Omission:  Sanction.** All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts." Mr. Thunder Hawk-Gallardo's failure to oppose defendant's statement of facts is *not* dispositive of defendant's motion. "Even if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim." Interstate Power Co. v. Kansas City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993).

Mr. Thunder Hawk-Gallardo's claims against Sgt. Wendling in the amended complaint were the same (though not identical) against Sgt. Wendling, Sgt. Wendling chose to stand on his originally filed answer rather than file a new answer to the amended complaint. The court therefore refers to Sgt. Wendling's original answer (Docket 23).

## FACTS

### A. Parties

Plaintiff, Mr. Thunder Hawk-Gallardo, is an inmate currently housed at the Pennington County Jail in Rapid City, South Dakota. Amended Complaint, Docket 28, p. 1. Mr. Thunder Hawk-Gallardo initiated the present lawsuit on or about January 5, 2017. Docket 1.

The defendant, Jeremy Wendling, is a coordinator and ID Sergeant at the South Dakota State Penitentiary, Jamison Annex (JPA). Docket 51 (hereinafter Wendling Affidavit), ¶ 1.

### B. Mr. Thunder Hawk's Allegations

#### 1. Eighth Amendment Claim—Failure to Protect

In this § 1983 action, Mr. Thunder Hawk-Gallardo asks the court for declaratory and injunctive relief and to order the defendant to pay compensatory, punitive and nominal damages as a result of an incident which occurred at the South Dakota State Penitentiary Jameson Annex (JPA) in Sioux

Falls, South Dakota, on September 20, 2016.[3]  Docket 28, pp 4, 5, 7.

According to Mr. Thunder Hawk-Gallardo, he was "cuffed and belly chained"

when another inmate, Dre Red Feather, assaulted him.  Docket 28, p. 4.

On the day of the alleged assault, Mr. Thunder Hawk-Gallardo and

Mr. Red Feather, along with a "good number" of other inmates had been

transported to SDSP in Sioux Falls, South Dakota, in a shuttle bus from the

Pennington County Jail in Rapid City.  Wendling Affidavit, ¶ 5.  For security

purposes, the inmates in the Rapid City shuttle bus were transported wearing

hand and leg restraints and "belly chains."  Wendling affidavit, ¶ 6.  When they

arrived at SDSP, the inmates were taken to the Jameson Prison Annex (JPA) for

processing.  Id.  Once inside the JPA, prison staff began the process of

removing the restraints from the shuttle bus inmates.  Id. at ¶ 7.  Sgt. Sean

---

[3] In his brief, Mr. Thunder Hawk-Gallardo cites legal authority pertaining to
pretrial detainees.  See Docket 56, p. 2.  It is well established that Eighth
Amendment protections have no application until there has been a formal
adjudication of guilt.  Walton v. Dawson, 752 F.3d 1109, 1117 (8th Cir. 2014).
The Fifth Amendment gives federal pretrial detainees, however, rights which
are at least as great as the rights afforded to a convicted prisoner under the
Eighth Amendment.  Id.  "The Constitution affords greater protection to a
pretrial detainee compared to a convicted inmate in the sense that 'due process
requires that a pretrial detainee not be punished.' "  Id. (citing Bell v. Wolfish,
441 U.S. 520, 535 n. 16 (1979)).

Mr. Thunder Hawk-Gallardo does not specifically refer to *himself*, however, in
his brief as a pretrial detainee.  The court takes judicial notice that Mr.
Thunder Hawk-Gallardo is a federal criminal defendant (see CR 15-50061,
United States District Court, District of South Dakota, Western Division) and
that, by the time the incident which is the subject of this civil rights lawsuit
occurred on September 20, 2016, Mr. Thunder Hawk-Gallardo had been
convicted in federal court.  See, id., Docket No. 106 (jury verdict dated August
31, 2016).  His constitutional right to be free from cruel and unusual
punishment (and his failure to protect claim) therefore arises under the Eighth
Amendment.

Levy assisted Sgt. Wendling with this duty on the day in question (September 20, 2016).  Wendling affidavit, ¶ 7; Docket 53 (hereinafter Levy affidavit), ¶ 6.

Mr. Thunder Hawk-Gallardo alleged that "Sgt. Wendling was physically able and had the chance to intervene and stop the assault."  Docket 28, p. 8. Mr. Thunder Hawk-Gallardo claims Sgt. Wendling watched Mr. Red Feather walk over to Mr. Thunder Hawk-Gallardo "swinging." Docket 28, p. 8. Mr. Thunder Hawk-Gallardo asserts Sgt. Wendling could have walked up and "just grabbed" Mr. Red Feather but instead, Sgt. Wendling simply allowed the fight to "end on its own."  Id.  Mr. Thunder Hawk-Gallardo alleges Sgt. Wendling was therefore deliberate and/or callous in his failure to prevent the attack.  Id.

Sgt. Wendling and Lt. Levy, however, aver the following regarding the assault.  Sgt. Wendling had just removed the restraints from Mr. Red Feather when, without provocation or notice, Mr. Red Feather began swinging and struck Mr. Thunder Hawk-Gallardo.  Wendling affidavit, ¶ 8; Levy affidavit, ¶ 7. Mr. Red Feather's behavior was both sudden and unexpected.  Id.  Neither of the officers had any prior information that would have suggested there was an "issue" between inmates Red Feather and Thunder Hawk-Gallardo.  Wendling Affidavit, ¶ 9; Levy affidavit, ¶ 8.

In the past, Sgt. Wendling has always had good communication with both the shuttle bus staff and the USM personnel.  Wendling affidavit, ¶ 9. Nevertheless, neither Sgt. Wendling nor Sgt. Levy had any information which led them to believe there was any animosity between Mr. Red Feather and

Mr. Thunder Hawk-Gallardo.  Wendling affidavit ¶ 9; Levy affidavit, ¶ 9.  Both Sgt. Wendling and Lt. Levy explain they believe there was nothing they could have done to prevent the incident from occurring.  Wendling affidavit ¶ 16; Levy affidavit ¶ 15.

After Mr. Red Feather hit Mr. Thunder Hawk-Gallardo in the face, Mr. Thunder Hawk-Gallardo bent over and pushed his shoulder into Mr. Red Feather, knocking Mr. Red Feather to the ground.  Wendling affidavit ¶ 11; Levy affidavit ¶ 10.  Sgt. Wendling immediately reached for his radio and called "code red."  Wendling affidavit ¶ 12; Levy affidavit ¶ 11.  Both officers restrained Mr. Red Feather and prevented him getting back to his feet, and from further attack upon Mr. Thunder Hawk-Gallardo.  Wendling affidavit ¶12; Levy affidavit ¶ 11.

The entire incident lasted only a matter of seconds.  Wendling affidavit ¶ 12; Levy affidavit ¶ 13.  Both Sgt. Wendling and Lt. Levy opine that that due to the short duration of the incident, neither of them could have intervened in the altercation any faster than they did.  Wendling affidavit ¶ 15; Levy affidavit ¶ 14.  After Mr. Red Feather was restrained, the two men were placed in different holding cells within the JPA.  Wendling affidavit ¶ 13; Levy affidavit ¶ 12.  The next morning, both men were returned to the Pennington County Jail.  Wendling affidavit ¶ 13; Levy affidavit ¶ 12.

### 2.    Eighth Amendment Claim—Cruel and Unusual Punishment

In Count II and Count III of his amended complaint, Mr. Thunder Hawk-Gallardo explains that for five and one-half hours after the incident with

8

Mr. Red Feather (12:30-6:00 p.m.) he (Mr. Thunder Hawk-Gallardo) was confined in a holding cell. Docket 28, p. 5-6. Mr. Thunder Hawk-Gallardo asserts that during this time, Sgt. Wendling denied him access to restroom facilities. Mr. Thunder Hawk-Gallardo claims he asked to use the restroom but was not allowed to do so, resulting in Mr. Thunder Hawk-Gallardo soiling himself. Docket 28, p. 5. Thereafter, Mr. Thunder Hawk-Gallardo was moved to the "hole" where he was allowed to change to clean clothes which amounted to, according to Mr. Thunder Hawk-Gallardo, a "crazy dress" (suicide gown). Docket 28, p. 6.

Mr. Thunder Hawk-Gallardo labels Counts II and III of his amended complaint as 5th and 14th Amendment "failure to protect" claims against Sgt. Wendling. Docket 28, pp. 5-6. This court, however, interprets a claim that Mr. Thunder Hawk-Gallardo was denied access to the bathroom for five and one- half hours as an Eighth Amendment claim of deliberate indifference based upon cruel and unusual prison conditions.

Mr. Thunder Hawk-Gallardo asserts he suffered injury by Sgt. Wendling's refusal to allow him to use the restroom for the five and one-half hours he was in the holding cell. Docket 28, pp. 5-6. Specifically, Mr. Thunder Hawk-Gallardo claims he now has "problems" when he uses the bathroom, his mental health has gotten worse, and he has "lost faith in the institutional staff do (sic) to their inebility (sic) and failure to protect . . ." Docket 28, p. 6. Because this claim was not identified in the district court's screening order of

Mr. Thunder Hawk-Gallardo's amended complaint, it was likewise not addressed in Sgt. Wendling's summary judgment papers.

This court will therefore discuss the Eighth Amendment cruel and unusual punishment claim against Sgt. Wendling as if it were presented to this court on screening—in other words, under the standard applicable to motions under FED. R. CIV. P. 12(b)(6).

## DISCUSSION

### A.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Once the movant has met

its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  <u>Anderson</u>, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.  <u>Anderson</u>, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  <u>Id.</u> (citing 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, <u>Fed. Practice & Procedure</u>, § 2725, at 93–95 (3d ed. 1983)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  <u>Id.</u> at 247–48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented:  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Id.</u> at 250.  Though *pro se* litigants like Mr. Thunder Hawk-Gallardo are entitled to a liberal construction of their pleadings, FED. R. CIV. P. 56 remains

equally applicable to them.  Quam v. Minnehaha Co. Jail, 821 F.2d 522, 522 (8th Cir. 1987).

The district court is not required to "plumb the record in order to find a genuine issue of material fact."  Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996).  Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed *pro se* in vindicating their constitutional rights, and [the Eight Circuit does] not approve summary dismissal of such *pro se* claims without regard for these special problems." Nickens v. White, 622 F.2d 967, 971 (8th Cir. 1980).  "When dealing with summary judgment procedures the technical rigor is inappropriate where . . . uninformed prisoners are involved."  Ross v. Franzen, 777 F.2d 1216, 1219 (7th Cir. 1985).

Federal Rule of Civil Procedure 56 governs the submission of facts and evidence in support of or opposing a party's position on summary judgment. Rule 56(c) states:

(c) Procedures.

**(1) *Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or;

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

> **(2) Objection That a Fact is Not Supported by Admissible Evidence.**  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) *Materials Not Cited.*** The court need not consider only the cited materials, but it may consider other materials in the record.
>
> **(4) *Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

See FED. R. CIV. P. 56(c).

The court may grant the motion if the record is otherwise sufficient and the opposing party fails to support its own assertion of fact, or to address the moving party's assertion of fact as required by FED. R. CIV. P. 56(c). FED. R. CIV. P. 56(e)(3).  The United States Supreme Court explained Rule 56 succinctly in Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990).  "Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial.  The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."  Id.

"[C]onclusive assertions of ultimate fact are entitled to little weight when determining whether a nonmovant has shown a genuine issue of fact sufficient to overcome a summary judgment motion supported by complying affidavits."  Miller v. Solem, 728 F.2d 1020, 1024 (8th Cir. 1984) (citing 10A C. Wright, A.

Miller & M. Kane, <u>Federal Practice & Procedure</u>, § 2727 at pp. 157-59 (1983)).

In <u>Miller</u>, the plaintiff opposed the defendants' judgment motion with his own

affidavit which contained "sweeping conclusory allegations that both

defendants intentionally failed to protect him . . ." <u>Miller</u>, 728 F.2d at 1025.

The affidavits he submitted were deficient because (among other reasons) they

contained inadmissible hearsay. <u>Id.</u> at 1026.  The court explained the

plaintiff's conclusory allegations were "unsupportable, frivolous, and cannot

withstand summary judgment." <u>Id.</u>  See <u>also</u>, <u>Wells Dairy Inc. v. Travelers</u>

<u>Indemnity Co.</u>, 241 F.Supp.2d 945, 956 (N.D. Ia. 2003) ("Hearsay statements

which cannot be categorized as a hearsay exception, conclusory allegations,

legal arguments, and statements not based on personal knowledge may be

stricken.") (citing cases).[4]

Mr. Thunder Hawk-Gallardo's responsive brief (Docket 56) contains

forceful argument in opposition to Sgt. Wendling's motion for summary

---

[4] An extreme example of an improper affidavit is found in <u>Alvariza v. Home</u>
<u>Depot</u>, 2007 WL 794416 (D. Colo., March 14, 2007).  In that case, the plaintiff
claimed she was wrongfully fired because of age discrimination.  When the
defendant moved for summary judgment, the plaintiff submitted an affidavit in
opposition which stated in part:
>    (1) Mr. Leo was neither human nor a resource—but that was his
>    job; (2) the older women were left feeling adrift, while other,
>    younger, more attractive people were doted upon by managers who
>    should be trained better; (3) this pattern of sexist remarks is not
>    limited to an isolated instance in an accessible computer room.
>    Mr. Hardy set the tone each and every time he came into the store
>    plaintiff was working. He was on a mission –put out to pasture
>    older women, and hire . . . prettier women—and he let plaintiff
>    know this on a regular basis.
<u>Id.</u> at *6.  The court held this affidavit "falls far, far short of the requirements of
Federal Rule of Civil Procedure 56 . . ." <u>Id.</u>

judgment.  This *argument* in Mr. Thunder Hawk-Gallardo's brief is not an affidavit or other piece of evidence supporting the assertion as required to withstand summary judgment under Rule 56(c).  It is just argument.

## B.    Official Capacity Claims

Mr. Thunder Hawk-Gallardo indicates he brings suit against Sgt. Wendling in both his official and individual capacities.  He requests both prospective injunctive and declaratory relief and monetary damages.  Official-capacity damages claims against state officials are treated as suits against the State itself.  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  The Supreme Court has held that money damages are not available for § 1983 claims against state officials who are sued in their official capacities.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 71 (1989).  However, prospective injunctive relief *is* available against state *officials* (though not against the state itself), when sued in their official capacities.  Will, 491 U.S. at 71 at n.10.  This is because "official-capacity actions for prospective relief are not treated as actions against the State."  Id. (quoting Graham, 473 U.S. at 167 n.14 (citing Ex Parte Young, 209 U.S. 123, 159-60 (1908))).  Therefore, an official-capacity claim for prospective injunctive relief might be asserted, for example, against an *officer* of a state university, but could not be asserted against the university itself, which is the state itself (agencies of the state are also the state for purposes of the Eleventh Amendment).  Monroe v. Arkansas State Univ., 495 F.3d 591, 594 (8th Cir. 2007).  Eleventh Amendment immunity protects the state itself from being sued.  Id.  When an official capacity claim is asserted for injunctive relief

against a state officer, the defense of qualified immunity does not apply.
Pearson v. Callahan, 555 U.S. 223, 242-43 (2009); Grantham v. Trickey, 21
F.3d 289, 295 (8th Cir. 1994).

"Because the real party in interest in an official capacity suit is the
governmental entity and not the named official, 'the entity's "policy or custom"
must have played a part in the violation of federal law.' " Hafer v. Melo, 502
U.S. 21, 25 (1991). This is because local governmental entities can only be
held liable under § 1983 to the extent the constitutional deprivation was made
pursuant to official policy or custom of the city, county or other local
governmental unit. See Monell v. New York City Dept. of Soc. Servs., 436 U.S.
658, 689-90 (1978). In official capacity suits, the only immunities available to
an individually-named defendant are the immunities that the governmental
entity possesses—i.e. usually Eleventh Amendment immunity. Hafer, 502 U.S.
at 25. "Official-capacity liability under 42 U.S.C. § 1983 occurs only when a
constitutional injury is caused by 'a government's policy or custom, whether
made by its lawmakers or by those whose edicts or acts may fairly be said to
represent official policy.' " Gladden v. Richbourg, 759 F.3d 960, 968 (8th Cir.
2014) (quoting Grayson v. Ross, 454 F.3d 802, 810 (8th Cir. 2006)). An official
policy or custom will not be inferred from the occurrence of a single incident.
Remington v. Hoopes, 611 Fed. Appx. 883, 886 (8th Cir. 2015) (citing
Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991)).

C.    **Individual Capacity Claims**

    1.    ***Prima Facie* Case and Qualified Immunity**

In order to show a *prima facie* case under 42 U.S.C. § 1983,

Mr. Thunder Hawk-Gallardo must show (1) defendant acted under color or

state law and (2) " 'the alleged wrongful conduct deprived him of a

constitutionally protected federal right.' " Zutz v. Nelson, 601 F.3d 842, 848

(8th Cir. 2010) (quoting Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th

Cir. 2009)).

Qualified immunity protects government officials from liability and from

having to defend themselves in a civil suit if the conduct of the officials "does

not violate clearly established statutory or constitutional rights." Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is immunity from

suit, not just a defense to liability at trial. Mitchell v. Forsyth, 472 U.S. 511,

526 (1985). Therefore, the Supreme Court has "repeatedly stressed the

importance of resolving immunity questions at the earliest possible stage in

litigation." Hunter v. Bryant, 502 U.S. 224, 536 (1991).

To determine whether an official may partake of qualified immunity, two

factors must be determined: (1) whether the facts that plaintiff has shown

make out a violation of a constitutional right and (2) whether that

constitutional right was "clearly established" at the time of the official's acts.

Saucier v. Katz, 533 U.S. 194, 201 (2001). If the court finds that one of the two

elements is not met, the court need not decide the other element, and the court

may address the elements in any order it wishes "in light of the circumstances

of the particular case at hand." <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). Defendants are entitled to qualified immunity if the answer to either of the <u>Saucier</u> prongs is "no."

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.' " <u>Stanton v. Sims</u>, 571 U.S. 3, 5 (2013) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 738 (2011) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986))).  " 'We do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.' " <u>Stanton</u>, 571 U.S. at 5.  " 'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.' " <u>Ambrose v. Young</u>, 474 F.3d 1070, 1077 (8th Cir. 2007) (quoting <u>Hunter</u>, 502 U.S. at 229).

Qualified immunity does not shield the defendant from claims for equitable relief. <u>Grantham v. Trickey</u>, 21 F.3d at 295.  If Mr. Thunder Hawk-Gallardo has failed to establish the violation of his constitutional or statutory rights by Sgt. Wendling, however, "[t]his conclusion necessarily resolves the merits of [plaintiff's] claims for equitable relief as well." <u>Cox v. Sugg</u>, 484 F.3d 1062, 1068 (8th Cir. 2007).   As such, even if equitable relief against Sgt. Wendling were theoretically possible, such relief would not be afforded if plaintiff's claims of constitutional and statutory violations fail on their merits.

The Supreme Court has stated that "if the defendant does plead the [qualified] immunity defense, the district court should resolve that threshold question before permitting discovery." Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (citing Harlow, 457 U.S. at 818). Only if the plaintiff's claims survive a dispositive motion on the issue of qualified immunity will the plaintiff "be entitled to some discovery." Id. Even then, the Court has pointed out that FED. R. CIV. P. 26 "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." Id. Such discretion includes the ability to establish limits on the number of depositions and interrogatories, to limit the length of depositions, to limit the number of requests to admit, to bar discovery on certain subjects, and to limit the time, place, and manner of discovery as well as its timing and sequence. Id.

**D.    Eighth Amendment Failure to Protect Claim—Application of the Law to the Facts**

Mr. Thunder Hawk-Gallardo bases his Eighth Amendment claim upon his assertion that Sgt. Wendling failed to adequately protect him against an attack by Mr. Red Feather which occurred on September 20, 2016. He does not allege Sgt. Wendling had any pre-existing knowledge the attack would occur, only that Sgt. Wendling did not act fast enough once the attack *did* occur. Even as to that allegation, however, Mr. Thunder Hawk-Gallardo provides insufficient evidence to counter Sgt. Wendling's claim that he intervened within seconds, and as soon as possible under the circumstances.

The Courts have long recognized that the Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to "protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994).  As the Court has stated:

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety.  Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious'  . . .a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities . . .The second requirement flows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.  To violate the Cruel and Unusual Punishments clause, a prison official must have a 'sufficiently culpable state of mind.' We reject [the] invitation to adopt an objective test for deliberate indifference.  A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. 511 U.S. at 834; 837 (citations omitted, punctuation altered).  The prison officials' duty is not to *guarantee* safety, but to "ensure *reasonable* safety, a standard that incorporates due regard for prison officials unenviable task of keeping dangerous men in safe custody under humane conditions."  Id. 511 U.S. at 844-45 (emphasis added).

Mr. Thunder Hawk-Gallardo has produced no evidence that Sgt. Wendling had a sufficiently culpable state of mind; that is, that

Sgt. Wendling was made aware of facts from which an inference could be drawn that Mr. Thunder Hawk-Gallardo would be attacked or that Sgt. Wendling actually drew the inference Mr. Thunder Hawk-Gallardo would be attacked.

The Eighth Circuit has cautioned that deliberate indifference claims must be viewed "with regard to the relevant prison official's knowledge at the time in question, not with hindsight's perfect vision." Blades v. Schuetzle, 302 F.3d 801, 804 (8th Cir. 2002). Threats between inmates are common and do not alone, in every circumstance, serve to impute actual knowledge of a substantial risk of harm. Id. In this instance, Mr. Thunder Hawk-Gallardo failed to plead anything close to a specific threat. He pleaded no facts in his amended complaint which would allow the court to conclude Sgt. Wendling had (before the attack) any information about *who* Mr. Thunder Hawk-Gallardo thought was going to attack him, *when* he thought they might attack him, *why* he thought he was going to be attacked, or even that he thought he would be attacked at all. If Mr. Thunder Hawk-Gallardo did not have information or did not share any information that could have predicted the attack, how could Sgt. Wendling have predicted or prevented it? As the district court explained in its screening order, an Eighth Amendment failure-to-protect claim does not arise from inmate injuries resulting from a surprise attack. Tucker v. Evans, 276 F.3d 999, 1001 (8th Cir. 2002).

Mr. Thunder Hawk-Gallardo's allegations, even assuming they are true, do not rise to the level of deliberate indifference to Mr. Thunder Hawk-

Gallardo's safety.   See, e.g., Porter v. Bodlovich, 1996 WL 535436 at *8 (N.D. Ind. Sept. 17, 1996) (inmate's general complaints and complaints that he "feared for his safety" are insufficient to establish deliberate indifference by prison officials; collecting cases); Green v. DeBruyn, 1996 WL 476691 at *5 (N.D. Ind. Aug. 15, 1996) (a defendant's awareness of a possibility of attack does not constitute deliberate indifference; inmate's complaint of generalized threats from other unidentified inmates is insufficient to show knowledge of excessive risk to his safety; collecting cases); Oliver v. Beaty, 2008 WL 4391546 at *4 (C.D. Ill. Sept. 22, 2008) ("At most [the inmate] may have orally reported to a random jail official a mere possibility of violence and such is not sufficient to impose liability on prison officials.").

Mr. Thunder Hawk-Gallardo nevertheless asserts that Sgt. Wendling was deliberately indifferent because he should have intervened more quickly than he did.  "A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." Williams v. Mueller, 13 F.3d 1214, 1216 (8th Cir. 1994).  However an officer's failure to intervene results in liability under the Eighth Amendment only when it rises to the level of deliberate indifference. Guzman v. Sheahan, 495 F.3d 852, 857 (7th Cir. 2007).  Whether a prison official is deliberately indifferent must be determined from the prison official's "perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998).

In circumstances nearly identical to Mr. Thunder Hawk-Gallardo's, the Eighth Circuit has found no deliberate indifference. <u>Holden v. Hirner</u>, 663 F.3d 336 (8th Cir. 2011). In that case, as here, the prisoner was assaulted by other prisoners, but sustained no apparent serious injury. <u>Id.</u> at 339. There was no evidence presented that, before the fight began, the defendant prison officials had any knowledge that the prisoners who assaulted the plaintiff (Holden) had threatened him. <u>Id.</u> at 341. Nor was there any evidence that Mr. Holden had told the prison officials that he felt threatened. <u>Id.</u> One of the prison officials stopped the fight within a minute after it began. <u>Id.</u> at 339. Under these circumstances, the Eighth Circuit held that Mr. Holden failed to present sufficient evidence to show the prison officials were deliberately indifferent. <u>Id.</u> at 342.

"[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." <u>Knox v. Doe</u>, 487 Fed. Appx. 725, 727 (3rd Cir. 2012) (citing <u>Smith v. Mensinger</u>, 293 F.3d 641, 650 (3rd Cir. 2002)).

Here, Mr. Thunder Hawk-Gallardo does not dispute that Sgt. Wendling, along with Lt. Levy, intervened by grabbing ahold of Mr. Red Feather after Mr. Red Feather threw the first few punches. The nub of Mr. Thunder Hawk-Gallardo's claim is that Sgt. Wendling was deliberately indifferent because this did not happen until after Mr. Thunder Hawk-Gallardo bent over and knocked Mr. Red Feather down to the ground. As Mr. Thunder Hawk-Gallardo raised

his head from doing so, he looked up to see Sgt. Wendling—not quite yet on his way to Mr. Thunder Hawk-Gallardo's aid--but instead using his radio to call a "code red." The two officers on the scene (Sgt. Wendling and Lt. Levy) aver that the entire scenario, start to finish, played out in a matter of seconds. Wendling affidavit, ¶ 14; Levy affidavit, ¶ 13. Under the circumstances, this court cannot find Sgt. Wendling's actions rise to the level of deliberate indifference. See e.g., Shields v. Dart, 664 F.3d 178, 181 (7th Cir. 2011) (prison guard not deliberately indifferent for failing to intervene when she promptly called for backup and waited for other officers to arrive to help break up a fight); Holden, 663 F.3d at 342. As such, Mr. Thunder Hawk-Gallardo has failed to establish that Sgt. Wendling violated Mr. Thunder Hawk-Gallardo's Eighth Amendment rights. The court therefore recommends that Sgt. Wendling's motion for summary judgment be granted.

**E.    Standard for Survival or Dismissal of Mr. Thunder Hawk-Gallardo's Eighth Amendment Cruel and Unusual Punishment Claim: 28 U.S.C. § 1915 and FED. R. CIV. P. 12(b)(6)**

This court interprets Mr. Thunder Hawk-Gallardo's claim in the amended complaint that Sgt. Wendling refused to allow Mr. Thunder Hawk-Gallardo to use the restroom for five and one-half hours as an assertion that Sgt. Wendling violated Mr. Thunder Hawk-Gallardo's Eighth Amendment right to be free from cruel and unusual punishment.

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), a prisoner's complaint should be dismissed on screening if it "fails to state a claim upon which relief may be granted." This standard is the same standard as is used to

24

determine whether a complaint satisfies the standards of FED. R. CIV. P. 12(b)(6).  Kane v. Lancaster County Dept. of Corrections, 960 F. Supp. 219 (D. Neb. 1997).  A prisoner complaint is screened for dismissal under 28 U.S.C. § 1915 "accepting as true all of the factual allegations contained in the complaint and affording the plaintiff all reasonable inferences that can be drawn from those allegations." Jackson v. Nixon, 747 F.3d 537, 540-41 (8th Cir. 2014).  Further, "a *pro se* complaint, however inartfully pleaded, [is held] to less stringent standards than formal pleadings drafted by lawyers." Jackson, 747 F.3d at 541. (citation omitted).

The United States Supreme Court addressed the standard district courts are to apply to FED. R. CIV. P. 12(b)(6) motions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The Court adopted a standard by which plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face." Id. at 570 (emphasis added).

The Court stated that FED. R. CIV. P. 8(a)(2) requires only that a plaintiff plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 554-55 (citing FED. R. CIV. P. 8(a)(2)).  The Court acknowledged that a complaint does not need "detailed factual allegations" to survive a motion to dismiss, but emphasized a plaintiff's obligation to provide more than a mere recital of the elements of his cause of action.  Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  The Court imposed a "plausibility standard" and held that a claim "requires a complaint

with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim.  Id. at 556.

The Court stated that conclusory allegations were not enough to survive a 12(b)(6) motion to dismiss a claim.  Id. at 556-57.  "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [a valid claim] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' " Id. at 557 (quoting FED. R. CIV. P. 8(a)(2)).  The Court said the plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.  The Court has held the Twombly Rule 12(b)(6) standard applies to all civil actions. Iqbal, 556 U.S. at 684.

The Iqbal Court stated the plausibility standard requires that the plaintiff allege more than a "sheer possibility" that the defendant committed the alleged unlawful conduct, but does not impose a "probability requirement" at the pleading stage.  Id. (quoting Twombly, 550 U.S. at 556).  The plaintiff must, however, allege sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of [the conduct complained of]."  Twombly, 550 U.S. at 556. Where a plaintiff pleads facts that are merely consistent with a defendant's liability, he has not "nudged [his] claim across the line from conceivable to plausible," and the complaint must be dismissed.  Iqbal, 556 U.S. at 680 (citing Twombly, 550 U.S. at 570).  There is no heightened requirement of fact pleading of specifics--only a requirement that the plaintiff plead "enough facts

to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

The Court identified two "working principles" from Twombly. Iqbal, 556 U.S. at 678.  First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint.  Id. (citing Papasan, 478 U.S. at 286).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678-79.

Second, in applying the plausibility standard, the Court stated that it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*–but has not "show[n]"–that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679.

A reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an

entitlement to relief." Iqbal, 556 U.S. at 679.  It is with these standards in mind that Mr. Thunder Hawk-Gallardo's claim regarding Sgt. Wendling's refusal to allow Mr. Thunder Hawk-Gallardo to use the restroom is carefully considered.

**F.    Eighth Amendment Cruel and Unusual Punishment Claim: Application of the Law to the Facts**

"The Constitution does not mandate comfortable prisons; it prohibits inhumane ones." Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

> To establish that a prisoner's conditions of confinement violate the Eighth Amendment, the prisoner must show that (1) the alleged deprivation is, objectively, sufficiently serious, resulting in the denial of minimal civilized measure of life's necessities, and (2) that the prison officials were deliberately indifferent to an excessive risk to inmate health or safety, meaning that the officials actually knew of and disregarded the risk. . . . Absent a showing that the prison officials consciously understood that prison conditions created such an excessive risk, the conditions are not a punishment within the meaning of the Eighth Amendment.

Williams, 49 F.3d at 445 (internal punctuation and citations omitted).

"Constructive knowledge, or the 'should have known' standard, is not sufficient to support a finding of deliberate indifference . . ." Spruce v. Sargent, 149 F.3d 783, 786 (8th Cir. 1988). Also, "the length of time a prisoner is subjected to harsh conditions is a critical factor in [the Eighth Amendment] analysis." Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (summary judgment in favor of defendants appropriate when inmate subjected to raw sewage in his cell for four days).  See also Frye v. Pettis County Sheriff Department, 41 Fed.

Appx. 906 (8th Cir. 2002)(summary judgment in favor of defendants appropriate when inmate subjected to raw sewage in his cell for ten weeks).

In <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002), the United States Supreme Court reversed the Eleventh Circuit's grant of qualified immunity to the defendant prison guards. <u>Id.</u> at 748. In <u>Hope</u>, the prisoner plaintiff was punished by the defendant guards for fighting with a guard at a prison worksite. The prisoner (Mr. Hope) was punished by being handcuffed to a hitching post outside in the prison yard in the heat of the day in Alabama for seven hours. <u>Id.</u> He was forced to remove his shirt, causing his skin to burn. <u>Id.</u> at 735. He was not given any bathroom breaks, and the guards taunted him by bringing a water cooler near to him, giving some nearby dogs a drink, and then knocking the cooler over, spilling the water onto the ground. <u>Id.</u> The prisoner's arms were attached to the posts above his shoulders, forcing him to remain standing for seven hours with his arms outstretched over his shoulders for seven hours in the blazing sun. <u>Id.</u> at 734-35. The Supreme Court specifically found the purpose of attaching the prisoner to the hitching post was punitive rather than to restore order, citing the Eleventh Circuit's factual finding that the prisoner had been transported back to the prison yard from the worksite where the altercation occurred, and had been left there, chained to the hitching post all day, for his fellow inmates to see when they returned for the day from their worksite assignment. <u>Hope</u>, 536 U.S. at 736, n. 5. The attachment of the prisoner to the hitching post under such circumstances amounted to cruel and unusual punishment in violation of the Eighth Amendment. <u>Id.</u> at 737. The

Court additionally found the prison officials' conduct violated clearly established constitutional rights of which a reasonable person should have known. Id. at 743. This was because both circuit precedent and Alabama DOC regulations prohibited the use of the hitching post in the manner it was used against Mr. Hope. Id. at 744-46. As such, the Court found, the prison officials had a fair and clear warning that the use of the hitching post under the circumstances alleged by Mr. Hope was unlawful. Id. at 746.

Mr. Thunder Hawk-Gallardo's allegations stand in stark contrast to the facts in Hope. He does not allege that he was denied bathroom privileges as a form of punishment. He does not allege he was subjected to taunting by Sgt. Wendling, or that he was made an example of for other inmates. Instead, he was placed in a private holding cell, shackled, and not allowed to use the bathroom for five and one-half hours. During that time he soiled himself, but was thereafter moved and given clean clothes (a "crazy dress" according to Mr. Thunder Hawk-Gallardo).

In a very similar post-Hope case, the prisoner's complaint was dismissed on the pleadings. In Rouse v. Caruso, 2011 WL 918327 at * 12 (E.D. Mich., Feb. 18, 2011), the plaintiff prisoners alleged, among other claims, that the defendant prison officials violated the Eighth Amendment prohibition against cruel and unusual punishment by denying them the use of the bathroom. Id. Specifically, they were on occasion denied the use of the restrooms for approximately four hours during fire drills and during "top lock," and would be subject to discipline for violating this rule. Id.

30

In rejecting such a temporary denial of bathroom use as a legitimate claim of cruel and unusual punishment under the Eighth Amendment, the Rouse court explained:

> Temporary restrictions on bathroom use, even ones lasting several hours, do not constitute the wanton infliction of pain or exhibit deliberate indifference to a prisoner's health or safety.  See Abdur-Raheem-X v. McGinnis, No. 99-1075, 1999 WL 1045069 at * (6th Cir., Nov. 12, 1999) ("[T]he Eighth Amendment does not require that prisoners enjoy immediately available . . . toilets."); Hernandez v. Battaglia, 673 F. Supp. 2d 673, 677 (N.D. Ill. 2009) (denial of bathroom break during 3-5 hour period of cell "shakedown" did not state Eighth Amendment claim); Owens v. Padilla, No. C06-4778 2008 WL 3916068 at *4 (N.D. Cal. Aug. 22, 2008) (confinement in prison barbershop for six hours without access to bathroom did not state Eighth Amendment claim); Trevino v. Jones, No. 06-CV-0257, 2007 WL 710213 at * 8 (N.D. Okla. March 6, 2007) (use of restrooms only twice during eight hour period does not constitute cruel and unusual punishment).

Id. at *12.  The court granted the defendants' motion for judgment on the pleadings.

Here, Mr. Thunder Hawk-Gallardo lumped his Eighth Amendment cruel and unusual punishment bathroom claim together with his Eighth Amendment failure to protect claim in his amended complaint—styling all three counts in the amended complaint as "failure to protect" claims.  See generally, Docket 28. The court's original order for service (Docket 11) likewise made reference only to his Eighth Amendment claim as it pertained to his failure to protect allegations.  Though this court separately "screens" Mr. Thunder Hawk-Gallardo's Eighth Amendment cruel and unusual punishment claim regarding denial of access to the bathroom, this court finds, as did the Rouse court that Mr. Thunder Hawk-Gallardo has failed to state a claim upon which relief may

be granted.  The court therefore recommends that Mr. Thunder Hawk-Gallardo's complaint be dismissed on the merits, in its entirety.

## CONCLUSION

Based on the foregoing law, facts and analysis, this court respectfully recommends that defendants' motion for summary judgment [Docket No. 48] be granted and that Mr. Thunder Hawk-Gallardo's complaint be dismissed in its entirety, with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 2nd day of April, 2018.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge