# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## SOUTHERN DIVISION

| | |
|---|---|
| FRANK THUNDER HAWK-GALLARDO, <br> Plaintiff, <br><br> vs. <br><br> SERGEANT JEREMY WENDLING, <br> Defendant. | 4:17-CV-04001-KES <br><br><br> ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Frank Thunder Hawk-Gallardo, an inmate at the Pennington County Jail, filed this lawsuit under 42 U.S.C. § 1983. Docket 28. Defendant, Sergeant Jeremy Wendling, moves for summary judgment based on qualified immunity. Docket 48. The court granted Wendling's motion to stay discovery pending the resolution of the qualified immunity issue. Docket 40. The matter was referred for a report and recommendation to Magistrate Judge Veronica L. Duffy under 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Duffy recommends that Wendling's motion for summary judgment be granted. Docket 66. Thunder Hawk-Gallardo objects to the report and recommendation. Docket 67; Docket 68. For the following reasons, the court grants Wendling's motion for summary judgment. Additionally, the court dismisses Thunder Hawk-Gallardo's cruel and unusual punishment claim.

# FACTS[1]

On September 20, 2016, Thunder Hawk-Gallardo, an inmate at the Pennington County Jail in Rapid City, South Dakota, was transported from Pennington County to the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota. Docket 50 ¶ 8. Thunder Hawk-Gallardo and Dre Red Feather were among a group of inmates transported in a shuttle bus to SDSP. *Id.* ¶ 9. For security purposes, Thunder Hawk-Gallardo and Red Feather each wore hand and leg restraints and a "belly chain" during transport. *Id.* ¶ 10.

When the group arrived at the SDSP, the inmates were taken to the intake area of the Jameson Prison Annex (JPA) for processing. *Id.* ¶ 10. Jeremy Wendling, ID Sergeant of the JPA, began to remove the inmates' restraints. Docket 51 ¶ 2, ¶ 7. Wendling was assisted by Sean Levy, a Lieutenant at the SDSP. *Id.* Once Red Feather's hand restraints had been removed, he swung at Thunder Hawk-Gallardo and struck him twice in the face. Docket 50 ¶ 11. In response, Thunder Hawk-Gallardo bent over and pushed himself into Red Feather to stop his advances. Docket 50 ¶ 15. Red Feather fell backward and Thunder Hawk-Gallardo stood up. *Id.* Once he stood up, Thunder Hawk-Gallardo looked for the guards and saw Wendling grabbing his radio to call a code. *Id.* ¶ 16; Docket 51 ¶ 12. Red Feather was then restrained by Wendling and Levy and placed in a holding cell. Docket 51 ¶¶ 12-13.

---

[1] The court recites the facts in the light most favorable to Thunder Hawk-Gallardo as the non-moving party to the motion for summary judgment. Where the facts are disputed, both parties' averments are included.

The entire incident between Thunder Hawk-Gallardo and Red Feather lasted "only a matter of seconds." Docket 51 ¶ 14. This assertion is supported by affidavits from Wendling, Levy, and from John Benting, a Major at the JPA. *Id.*; Docket 53 ¶ 13; Docket 52 ¶ 13. Thunder Hawk-Gallardo's only description of the incident's duration—"a bit of time"—is less specific but not inconsistent with Wendling's averment. Docket 28 at 8. The brief duration of the incident did not provide an opportunity for prison staff, including Wendling, to intervene any sooner than they did. Docket 50 ¶ 19.

Both parties were surprised by Red Feather's attack on Thunder Hawk-Gallarado. Docket 50 ¶ 12; Docket 56 at 4. Thunder Hawk-Gallardo stated he "[did] not know why inmate Red Feather attacked me." Docket 56 at 4. Wendling stated that he "had no advance knowledge of any animosity or ill will between the two inmates that would have given me reason to believe, even in the slightest sense, that there was any risk of harm to Thunder Hawk-Gallardo." Docket 51 ¶ 10.

Once the officers intervened in the fight and Red Feather was removed to a holding cell, Thunder Hawk-Gallardo was placed in a different holding cell within the JPA. Docket 51 ¶ 13. Thunder Hawk-Gallardo was secured to a cement block and was denied use of a bathroom from 12:30 p.m. to 6:00 p.m. Docket 28 at 5. During this time, Thunder Hawk-Gallardo asked Wendling to call his lawyer and asked to use the bathroom. *Id.* Wendling told Thunder Hawk-Gallardo to "shut up" in response to his requests. *Id.* After several hours in pain and still needing a bathroom, Thunder Hawk-Gallardo urinated and

defecated on himself. *Id.* A prison official then took him to the "hole" where Thunder Hawk-Gallardo alleges he still had urine and feces on himself and was given a "crazy dress" to wear. *Id.*

The following day, both Thunder Hawk-Gallardo and Red Feather were transported back to the Pennington County Jail. Docket 51 ¶ 13.

## LEGAL STANDARD

Review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. Under 28 U.S.C. § 636(b)(1), the court reviews de novo any objections that are timely made and specific. *See* Fed. R. Civ. P. 72(b) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). In conducting its de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Helton v. Southland Racing Corp.*, 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). The burden is placed on the moving party to

establish both the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); Fed. R. Civ. P. 56(e).

"A dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Westchem Agric. Chems. Inc., v. Ford Motor Co.*, 990 F.2d 426, 429 (8th Cir. 1993) (quoting *Anderson*, 477 U.S. at 248). "A fact is material when it might affect the outcome of the suit under governing law." *Davis v. Or. Cty.*, 607 F.3d 543, 548 (8th Cir. 2010) (citing *Anderson*, 477 U.S. at 248)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48.

The availability of summary judgment is essentially a question of determining "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. Though pro se litigants are entitled to a liberal construction of their

pleadings, Federal Rule of Civil Procedure 56 remains equally applicable to them. *Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987).

## DISCUSSION

Wendling moves for summary judgment based on qualified immunity. Docket 48. Because the court has stayed discovery in this matter until the issue of qualified immunity is determined, the court must first determine whether Wendling is entitled to qualified immunity. Before determining whether Wendling is entitled to qualified immunity, however, the court will address Thunder Hawk-Gallardo's objections to the report and recommendation, his official capacity claim against Wendling, and his request for declaratory and injunctive relief.

## I. Objections to the Report and Recommendation

Thunder Hawk-Gallardo timely submitted objections to the report and recommendation. Docket 67; Docket 68. Thunder Hawk-Gallardo identifies six specific objections, five of which are factual objections. Docket 67 at 1-2. Thunder Hawk-Gallardo's first objection is to the report and recommendation's conclusion that Thunder Hawk-Gallardo did not file a response to Wendling's statement of undisputed material facts. Docket 67 at 1. The report and recommendation acknowledges that Thunder Hawk-Gallardo submitted a motion in opposition to defendant's motion for summary judgment (Docket 56). Docket 66 at 4. But Thunder Hawk-Gallardo failed to respond to defendant's statement of undisputed material facts in compliance with Local Rule 56, a

copy of which was provided to him. [2] *Id.* Because Thunder Hawk-Gallardo's motion in opposition to Wendling's summary judgment motion did not identify material facts that were in genuine dispute, the report and recommendation was accurate and the objection is overruled.

Second, Thunder Hawk-Gallardo objects to the report and recommendation's clarification that he was not a pretrial detainee on September 20, 2016. Docket 67 at 1. The report and recommendation correctly states that while Thunder Hawk-Gallardo cites legal authority describing pretrial detainees' rights, he does not specifically identify himself as a pretrial detainee. Docket 66 at 6 n.3. To do so would be incorrect. The report notes that Thunder Hawk-Gallardo is a post-trial detainee. *Id.* Thus, his claims are properly evaluated under the Eighth Amendment. *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). The objection is overruled.

Third, Thunder Hawk-Gallardo objects to the report and recommendation's statement of facts regarding Wendling and Levy's actions during the brief time the attack occurred. Docket 67 at 2. The events in the report and recommendation, and their chronology, are supported by affidavits

---

[2] A party opposing a motion for summary judgment must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record. A party opposing a motion for summary judgment must identify any material facts on which there exists a genuine material issue to be tried. D.S.D. Civ. LR 56.1.B. Further, "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. LR 56.1.D.

in the record. *See* Dockets 51, 52, 53. Thunder Hawk-Gallardo objects to the possibility of those actions occurring within seconds, but he does not provide his own facts to controvert those in the record. Thus, the objection is overruled.

Fourth, Thunder Hawk-Gallardo objects to the report and recommendation's statement of facts regarding his transfer back to the Pennington County Jail on the day following the incident described in the amended complaint. Docket 67 at 2. Thunder Hawk-Gallardo suggests he was transferred to a correctional facility in a different state, but he does not specify a location. *Id.* Thunder Hawk-Gallardo did not previously raise this objection in response to Wendling's statement of undisputed material facts. Even if he had previously objected and created a dispute of fact, the specific correctional facility to which he was transferred on the day following the incident is not material to Thunder Hawk-Gallardo's § 1983 claims. Thus, the objection is overruled.

Fifth, Thunder Hawk-Gallardo objects to the report and recommendation's statement that he was given clean clothes to wear once the fight ended and he was sent to the "hole." Docket 67 at 2. But Thunder Hawk-Gallardo's objection overlooks that the report and recommendation's finding qualifies that the type of clothing he was given "amounted to . . . a 'crazy dress' (suicide gown)." Docket 66 at 9. In this regard, the report and recommendation's statement of facts is not inconsistent with Thunder Hawk-Gallardo's own averment. Thus, the objection is overruled.

Sixth, Thunder Hawk-Gallardo objects to the report and recommendation's analysis of his cruel and unusual punishment claim as a screening and dismissal under 28 U.S.C. § 1915A. Docket 67 at 3. This objection is addressed by the court *infra* Section IV.

Thunder Hawk-Gallardo's misunderstandings of the report and recommendation, and his objections consisting of restatements of allegations in the complaint, do not establish genuine disputes of material fact. Instead of citing to specific evidence showing a genuine dispute of fact, Thunder Hawk-Gallardo chose to " 'rest upon the mere allegations of his pleadings . . . .' " *Anderson*, 477 U.S. at 248 (quoting Fed. R. Civ. P. 56(e)). The court finds that the report and recommendation's statement of facts is not contrary to the record. The record is shaped significantly by Wendling's statement of undisputed material facts, Docket 50, which is deemed to be admitted because it was not controverted by Thunder Hawk-Gallardo as required by the Local Rules. Docket 66 at 4. Thus, for purposes of summary judgment, Thunder Hawk-Gallardo's five factual objections fail to overcome his burden to show that a genuine dispute of material fact exists.

## II. Official Capacity Claim

### A. Money Damages Remedy

Thunder Hawk-Gallardo also brought suit against Wendling in his official capacity. Docket 28 at 2. The Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*,

491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. *Id.* While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66. The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.*

Here, as part of Thunder Hawk-Gallardo's requested remedy, he seeks to recover money damages. Docket 28 at 7. Consequently, because Thunder Hawk-Gallardo sued Wendling in his official capacity, Thunder Hawk-Gallardo has asserted a claim for money damages against the state of South Dakota. The state of South Dakota has not waived its sovereign immunity. Thus, to the extent Thunder Hawk-Gallardo seeks to hold Wendling liable in his official capacity for money damages, the court finds that Wendling, in his official capacity, and thus, the state of South Dakota, is protected by sovereign immunity and is entitled to judgment on this issue as a matter of law.

### B. Declaratory and Injunctive Relief

Thunder Hawk-Gallardo's official capacity claim also seeks declaratory and injunctive relief. Claims for declaratory and injunctive relief are rendered moot when a prisoner is released or transferred to another facility. *See Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (discussing *Hickman v. Missouri*, 144 F. 3d 1141, 1142 (8th Cir. 1998) and *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985)). This is true even if the prisoner argues that he might, at

some future time, be incarcerated at the same prison. *Smith*, 190 F.3d at 855. Thunder Hawk-Gallardo was transferred from the SDSP back to the Pennington County Jail on the day following the incidents described in the amended complaint. Docket 51 ¶ 13; Docket 53 ¶ 12. Thus, Thunder Hawk-Gallardo's claims for declaratory and injunctive relief are moot.

## III. Qualified Immunity

Thunder Hawk-Gallardo also sued Wendling in his individual capacity. Docket 28 at 2. 42 U.S.C. § 1983 recognizes a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a right protected by federal law or the United States Constitution. A § 1983 claim for monetary damages may proceed against state officials sued in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Wendling, in his individual capacity, contends that he is entitled to qualified immunity. Docket 49 at 2. The doctrine of qualified immunity generally shields " 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Smith v. City of Minneapolis*, 754 F.3d 541, 545 (8th Cir. 2014) (alteration omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is immunity from suit rather than just a defense from liability, and thus the defense is lost if a case is erroneously permitted to go to trial. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "For this reason, qualified immunity cases are somewhat unique in that 'the court should [not] deny summary judgment any time a material issue of fact remains on the [constitutional violation] claim [because to do so] could undermine the goal of qualified immunity.' " *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (alterations in original) (quoting *Brockinton v. City of Sherwood*, 503 F.3d 667, 671 (8th Cir. 2007)). Further, because qualified immunity is an immunity from suit, the Supreme Court has noted that immunity questions must be resolved at the earliest possible stage of litigation, preferably prior to discovery. *Pearson*, 555 U.S. at 231-32.

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). The court may analyze these two prongs in either order, *Pearson*, 555 U.S. at 236, but they must thoroughly analyze both prongs of the qualified immunity doctrine. *Jones*, 675 F.3d at 1162 (remanding a summary judgment order "for a more detailed qualified immunity analysis"). "To deny [defendant] qualified immunity, [the court] must resolve both questions in [plaintiff's] favor." *Hawkins v. Gage Cty.*, 759 F.3d 951, 956 (8th Cir. 2014).

### A. Whether a Clearly Established Right Existed at the Time of Alleged Deprivation

"The Cruel and Unusual Punishments Clause [of the Eighth Amendment] 'was designed to protect those convicted of crimes,' and consequently the Clause applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.' " *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 664, 671 n.40 (1977)) (internal citation omitted). The Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994), stated that this protection includes a "clearly established . . . right to be protected from violence by other inmates." *Id.* at 833. On September 20, 2016—the date of the incidents described in the amended complaint—Thunder Hawk-Gallardo was a federal inmate who had been convicted in federal court on August 31, 2016. Docket 66 at 6 n.3. Thus, his claims against Wendling are evaluated under the Eighth Amendment. Wendling does not dispute that Thunder Hawk-Gallardo's right to be protected from violence at the hands of other prisoners was clearly established at the time the attack occurred. Docket 49 at 4.

### B. Whether Wendling Deprived Thunder Hawk-Gallardo of a Constitutional Right

In the other prong of the qualified immunity analysis, the court must consider whether Thunder Hawk-Gallardo's Eighth Amendment right was violated. Thunder Hawk-Gallardo styled his complaint as an Eighth Amendment "failure to protect" claim. Docket 28 at 4-5. But a failure to protect claim does not arise from inmate injuries resulting from a surprise attack by

another inmate. *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002). Instead, the court construes Thunder Hawk-Gallardo's claim as a deliberate indifference claim that argues that Wendling was deliberately indifferent to his safety by not intervening in the attack sooner. Docket 11 at 5.

Prison officials must " 'take reasonable measures to abate substantial risks of serious harm, of which the officials are aware.' " *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (quoting *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995)). Prison officials violate an inmate's right to be protected from harm by fellow inmates "only when they exhibit a 'deliberate or callous indifference' to an inmate's safety." *Tucker*, 276 F.3d at 1001 (quoting *Davidson v. Cannon*, 474 U.S. 344, 347 (1986)). A two-step inquiry determines whether a prison official was deliberately indifferent and thus whether a right was violated. *Walls v. Tadman*, 762 F.3d 778, 782 (8th Cir. 2014) (citing *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010)).

> A prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious; i.e., whether the inmate is incarcerated under conditions posing a substantial risk of serious harm. The second requirement is subjective and requires that the inmate prove that the prison official had a sufficiently culpable state of mind. In prison conditions claims . . . the subjective inquiry regarding an official's state of mind is one of deliberate indifference' to inmate health or safety. An official is deliberately indifferent if he or she actually knows of a substantial risk *and* fails to respond reasonably.

*Whitson*, 602 F.3d at 923 (internal quotations and citations omitted) (emphasis added). Thus, to establish deliberate indifference, Thunder Hawk-Gallardo must show (1) that his incarceration in JPA on September 20, 2016, objectively

posed a substantial risk of serious harm, *and* (2) that Wendling subjectively knew of the risk and disregarded it.

Here, the facts and analysis in *Holden v. Hirner*, 663 F.3d 336 (8th Cir. 2011), are instructive. In *Holden*, the plaintiff, a convicted sex offender, was placed in the jail's protective custody pod that provides added protection for inmates who face a greater likelihood of attack. *Id.* at 339. Plaintiff was attacked by his three cellmates inside the pod. *Id.* The defendant, a prison official, intervened to stop the attack about one minute after it began. *Id.* The district court granted defendant's motion for summary judgment based on qualified immunity. *Id.* at 340.

On appeal, the Eighth Circuit in *Holden* analyzed the two requirements necessary for a plaintiff to establish deliberate indifference. *Id.* at 341-42. First, the court determined that, viewed objectively, plaintiff had not been placed at risk of substantial harm. *Id.* at 341. Prison officials had perceived a potential risk and taken steps to abate the risk by placing the plaintiff in the protective pod. *Id.* Second, the court considered the subjective prong of the deliberate indifference test. *Id.* at 341-42. The court stated that even if the cellmate's violent history created an objective risk of serious harm, "an inmate's history of violence alone is insufficient to impute to prison officials subjective knowledge of the inmate's danger to harm other inmates." *Id.* (citation omitted). There was no evidence the defendant was actually aware of the violent history of plaintiff's cellmate. *Id.* at 342. The record also did not establish that defendant knew of that cell mate's violent history and disregarded that substantial risk of serious

harm. *Id.* Thus, summary judgment was appropriate because the plaintiff failed to establish both requirements of the deliberate indifference test. *Id.*

Thunder Hawk-Gallardo points to *Cohrs v. Norris*, 210 F.3d 378 (8th Cir. 2000) (unpublished)[3] as analogous to his own case. In *Cohrs*, the Eighth Circuit affirmed summary judgment for defendants on deliberate indifference for failure to prevent an attack, but remanded due to factual disputes on the issue of deliberate indifference for failure to intervene. *Id.* at 2. The plaintiff in *Cohrs* was attacked by several inmates. *Id.* The record indicated that the defendant, a prison official, watched the fight from the safety of the control booth for twenty to twenty-five minutes without taking any steps to intervene or end the assault. *Id.* at 2. The court noted that while "prison guards have no constitutional duty to intervene in an armed assault," they could exhibit deliberate indifference by "failing to seek assistance from other parts of the prison." *Id.* The Eighth Circuit reversed the district court's grant of summary judgment on deliberate indifference for failure to intervene and remanded for a factual determination of what steps, if any, defendant took to intervene during the twenty to twenty-five minutes the assault persisted. *Id.*

*Williams v. Mueller*, 13 F.3d 1214 (8th Cir. 1994) is another case cited by Thunder Hawk-Gallardo in opposition to Wendling's motion for summary judgment. In *Williams*, two inmates assaulted plaintiff inside the jail dormitory. *Id.* at 1215. Plaintiff tried to escape his attackers, but the defendant, a

---

[3] The court cites to this unpublished opinion issued before January 1, 2007, for its "[relevance] to establishing . . . the law of the case." 8th Cir. R. 32.1A.

correctional officer, observed the attack, then closed and locked the dormitory door without intervening. *Id.* After a "significant delay," the defendant called on other officers to intervene. *Id.* Their intervention ended the assault twenty to twenty-five minutes after it began. *Id.* The court stated that the correctional officer's obligation was to "intervene or otherwise act to end the assault." *Williams v. Mueller*, 13 F. 3d 1214, 1216 (8th Cir. 1994). Because questions of fact existed as to whether the defendant was deliberately indifferent in his intervention, the Eighth Circuit reversed the district court's grant of summary judgment and remanded for further factual determinations. *Id.* at 1217.

The Eighth Circuit has noted that inherent dangers exist inside a prison due to the nature of its occupants. *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir 1991) (citations omitted). The substantial risk required to satisfy deliberate indifference must rise above the inherent danger in prisons and must be more than " 'single . . . or isolated incidents.' " *Id.* (quoting *Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984)). Here, nothing in the record supports a finding that Thunder Hawk-Gallardo's incarceration placed him in substantial risk of serious harm. The record does not suggest that the intake procedures at the JPA on September 20, 2016, were dangerous or beyond standard protocol. In fact, the record indicates that Red Feather and Thunder Hawk-Gallardo were both wearing hand and leg restraints as a security measure during transport and on arrival. Docket 50 ¶ 10. The record also does not contain any information about Thunder Hawk-Gallardo's or Red Feather's history, if any, of violent behavior in prison. Thunder Hawk-Gallardo was

surprised by the attack. Docket 56 at 4. He does not point to any evidence showing that, objectively, a substantial risk of serious harm could have been perceived as he entered the JPA. *See* Docket 56; Docket 67. This surprise attack appeared to be an isolated incident. Viewed objectively, Thunder Hawk-Gallardo cannot establish that he was subject to a substantial risk of serious harm at the JPA on September 20, 2016. Thus, Thunder Hawk-Gallardo fails to establish the first requirement for deliberate indifference.

Even if Thunder Hawk-Gallardo could establish that he faced a substantial risk of harm in the JPA, the record does not support a conclusion that Wendling knew of and disregarded a substantial risk of serious harm. Thunder Hawk-Gallardo argues that Wendling's rank, experience, and knowledge of SDPS policies should preclude the type of attack that transpired. Docket 56 at 2. In *Cohrs* and *Williams*, the record was void of any account of defendants' action or inaction during the time the assaults persisted without intervention from facility staff. *Cohrs*, 210 F.3d at 2; *Williams*, 13 F.3d at 1216. Here, however, when Wendling saw the attack, he acted within seconds to both call for additional help and to physically intervene. In fact, Wendling responded with greater expediency than the defendant in *Holden* who intervened in about a minute. Docket 50 ¶ 18; *Holden*, 663 F.3d at 339. The Eighth Circuit held that the defendant in *Holden* was not deliberately indifferent in his intervention to a prison attack. *Holden*, 663 F.3d at 342. When Thunder Hawk-Gallardo surprisingly found himself being attacked, Wendling intervened to abate the harm within seconds. Docket 50 ¶ 18.

Thunder Hawk-Gallardo's case is also distinguishable from *Cohrs* and *Williams* in that those cases were remanded for further determinations of fact. Here, the undisputed record unequivocally indicates that Wendling intervened and he did so quickly with no opportunity to intervene sooner than he did. *Id.* ¶¶ 18-19. "Conclusive assertions of ultimate fact," such as Thunder Hawk-Gallardo's allegation without specific factual support that Wendling could have intervened sooner, Docket 56 at 7, "are entitled to little weight when determining whether a non-movant has shown a genuine issue of fact." *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir. 1984). Without evidence and specific facts to controvert those submitted by Wendling, Thunder Hawk-Gallardo has failed to establish any genuine dispute of material fact exists concerning the subjective requirement of deliberate indifference. The undisputed record does not show that Wendling failed to respond to a known risk. Thus, as a matter of law, Gallardo cannot establish the second requirement of deliberate indifference.

The record indicates that Wendling's only failure was a failure to predict a surprise attack by one prisoner on another. Such a failure is not actionable as a constitutional violation under 42 U.S.C. § 1983. *See Tucker*, 276 F.3d at 1001. As the report and recommendation identifies, the crux of Thunder Hawk-Gallardo's claim is that Wendling did not intervene in the precise manner and with the expediency Thunder Hawk-Gallardo desired. Docket 66 at 23. But when applying the undisputed facts to the deliberate indifference standard, and viewing the evidence in the light most favorable to Thunder

19

Hawk-Gallardo, Wendling's conduct does not rise to the level of deliberate indifference. Thus, Wending did not violate Thunder Hawk-Gallardo's Eighth Amendment right and Wending is entitled to qualified immunity.

## IV. Dismissal of Thunder Hawk-Gallardo's Cruel and Unusual Punishment Claim

The report and recommendation appropriately screens Thunder Hawk-Gallardo's claim of cruel and unusual punishment for refusing access to a bathroom. "[T]he court shall dismiss [a claim] *at any time* if the court determines that . . . (B) the action . . . (ii) fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). *See* Fed. R. Civ. P. 12(b)(6) (providing for dismissal of a claim if the claimant fails to state a claim upon which relief can be granted).

"To survive[,] . . . a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court considers only the materials in the pleadings and exhibits attached to the complaint, drawing on experience and common sense and viewing plaintiff's claim as a whole. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quotation omitted). "[P]ro se litigants must set forth [a claim] in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006). "[A] pro se complaint, however, inartfully pleaded, [is

held] to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014).

Thunder Hawk-Gallardo objects to screening and dismissal of his cruel and unusual punishment claim at this stage. Docket 67 at 3. He does not object to the standard for dismissal and its application of facts as contained in the report. *Id.* He seems to argue that the claim was already screened and that it survived. *Id.* But the report and recommendation correctly states that in the court's screening of the amended complaint, Docket 27, the court never addressed the incident Thunder Hawk-Gallardo identifies as Counts II and III that the court construes as a claim for cruel and usual punishment for denying him use of a bathroom. Docket 66 at 31. Because neither the initial screening order, Docket 11, nor the rescreening of the amended complaint, Docket 27, address his cruel and unusual punishment claim, screening within the report and recommendation is appropriate. Upon de novo review, the court finds that dismissal following screening is appropriate. Thus, the court adopts the report and recommendation regarding Thunder Hawk-Gallardo's cruel and unusual punishment claim.

CONCLUSION

Wendling, in his official capacity, is protected by sovereign immunity against Thunder Hawk-Gallardo's claim for money damages. Thunder Hawk-Gallardo's claim for declaratory and injunctive relief is moot because he was transferred to another correctional facility. Thunder Hawk-Gallardo's Eighth Amendment right was clearly established on September 20, 2016. But he

cannot prove a violation of that right because he failed to establish that Wendling acted with deliberate indifference. Thus, Thunder Hawk-Gallardo has failed to overcome the qualified immunity defense, and Wendling is entitled to summary judgment. Thunder Hawk-Gallardo's cruel and unusual punishment claim is dismissed because he fails to state a claim on which relief may be granted.

Thus, it is ORDERED:

1. Thunder Hawk-Gallardo's objections to the report and recommendation are overruled (Docket 67; Docket 68).

2. The report and recommendation (Docket 66) is adopted in full.

3. Wendling's motion for summary judgment (Docket 48) with prejudice is granted.

4. Thunder Hawk-Gallardo's cruel and unusual punishment claim is dismissed without prejudice.

DATED July 18, 2018.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE